Opinion by
Mr. Justice Hall.
Here we refer to the parties by their given names. At the time the actions herein referred to were commenced, the parties involved were partners, doing business under the name of “El Paso Electric Co.” to which we refer as the partnership.
On August 18, 1960, William commenced three actions in the District Court of El Paso County. In the first, Civil Action No. 39868, he named as defendants, Dudley and Henry. He alleged that pursuant to a partnership agreement dated March 26, 1952, the three of them were at that time partners conducting an electrical contracting business under the firm name of “El Paso Electric Co.”; that discord existed among the partners and that the partnership should be dissolved and its affairs wound up.
Dudley, on September 9, 1960, filed his answer admitting the then existence of the partnership and alleging that the parties have been partners since 1946. By way of counterclaim and cross claim, he alleges that William, in violation of the partnership agreement, has for more than six months refused to devote his time to partnership affairs, for which he should answer to the other partners; that the partnership business has more value as a going concern than it would have through liquidation. He prays for a dissolution and accounting.
Henry, on September 9, 1960, filed his answer admitting the then existence of the partnership and alleging that the parties have been partners since 1946. He also *559 filed a counterclaim and cross claim against William wherein he complains that William has engaged in business enterprises contrary to the best interests of the partnership. He, too, prays for a dissolution and accounting.
New matter contained in the counterclaims and cross claims of Dudley and Henry was denied in answers filed by William.
On October 3, 1960, pursuant to stipulation of all parties, the court entered its order directing the sale of the assets of the partnership, and that “The business shall be sold as a going business * * * .”
The property was sold October 7, 1960. Henry was the purchaser, the sale price $12,200.00.
Following a pre-trial conference an order was entered as follows:
“It was agreed and ordered that F. S. Auld, Certified Public Accountant, shall make up a summary of all partnership transactions in such form as may be agreed by the parties and showing the result of the different contentions of the parties, one such accounting to be made on the Cascade apartment property, and one on the partnership and business property, and one on the Corona apartment house, unless it is a part of the partnership accounting. Such documents prepared by Auld will show any and all payments to the parties, or any of them, the status of the respective drawing accounts, investments accounts of the parties, and each of them, with such explanatory data as may appear necessary. A copy of such summary so prepared by the accountant shall be delivered to the attorneys for each party simultaneously, and the expenses for the services of such accountant shall be borne by the partnership funds.” (Emphasis supplied.)
This order was approved by counsel for all of the parties.
In the second, Civil Action No. 39869, William named as defendant, Dudley. Therein he sought to have parti *560 tioned certain real property known as the “Business property” and the “Corona property,” said properties alleged to be owned by himself and Dudley as tenants in common.
Henry was permitted to intervene in this case and filed his complaint in intervention, wherein he alleged that the properties sought to be partitioned are the properties of the partnership and that he is the owner of an undivided one-third interest therein. He asks for an accounting of rents and for a decree directing William and Dudley to convey to him a one-third interest therein.
Dudley filed no answer to William’s complaint. Dudley and William filed separate answers to Henry’s complaint of intervention. They each deny that Henry has any interest in the property.
In the third, Civil Action No. 39875, William named as defendants Dudley, individually, and as executor of the Estate of Dudley J. Elkins, Sr. (father of William, Dudley and Henry). Later Henry was joined as a party defendant. Therein William alleges that he is the owner of an undivided five-twelfths interest in real property known as the “Cascade property”; that Dudley owns five-twelfths and Henry two-twelfths. He seeks to have the property partitioned.
Dudley filed his answer, admitting the allegations of the complaint and denying that he, as executor, has or claims any interest in the property.
Henry answered, admitting that “he has an interest in the real property * * * .”
By agreement of the parties, the three cases were consolidated for trial. Trial was to the court. On June 13, 1961, the trial judge made findings of fact and conclusions of law. Decree was entered in each case in conformity with the findings and conclusions.
In substance the findings and holdings of the trial court are as follows:
*561 In Case No. 39868 it was held that the real property, known as the Business property and the Corona property, sought to be partitioned in Case No. 39869, was not partnership property; that it was the property of William and Dudley and that Henry had no interest therein. In the partnership accounting covering the period January 1, 1960 to October 7, 1960, the court made adjustments for failure of William to work during the period May 6 to October 7, and made an adjustment for net earnings of Henry for the period June 9 through August, the same being net profits of business that Henry was conducting during said period in competition with the partnership. The court further decreed that the partnership be dissolved, the proceeds of the sale and profits as adjusted be divided equally among the parties, taking into consideration the credits and debits of the partners as reflected by the books of the partnership.
In Case No. 39869, FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECREE was entered, wherein the court held that the Business property and Corona property was owned by William and Dudley and that Henry had no interest therein. The property was ordered sold, the proceeds to be divided equally between William and Dudley.
In Case No. 39875, FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECREE was entered, wherein the court held that the real property therein involved, “The Cascade property,” was owned five-twelfths by William, five-twelfths by Dudley and two-twelfths by Henry.
On August 8, 1961, the parties stipulated that the three cases having been consolidated for trial, and that the clerk’s record and reporter’s transcript constitute a consolidated record and transcript, that the matters involved in cases number 39868 and 39869 could be consolidated and considered under one writ of error, *562 providing any party desired to seek review by writ of error.
Henry is here seeking review of the proceedings in cases numbered 39868 and 39869. No review is sought with reference to Case No. 39875.
Though Dudley is designated as a defendant in error, he has filed no brief and made no appearance here.
These cases present but one major problem for solution. Having resolved that problem, the results to follow become quite clear.
The basic problem presented to the trial court and here is: When did Henry become an equal partner with William and Dudley in the business of El Paso Electric Co.?
Henry and Dudley claim that he became such a partner in 1945 or 1946.
William claims that Henry became such a partner January 1, 1950, as evidenced by written partnership agreement dated March 23, 1952.
There is no dispute of the fact that from 1932 to May 15, 1945, William and Dudley, together with their father, Dudley J. Elkins, Sr., were, pursuant to a verbal agreement, equal partners, operating under the firm name of El Paso Electric Co. Equally clear is the fact that Henry, though working for the firm during a part of this period, was an employee of the partnership and had no interest in the partnership business.
On May 15, 1945, Dudley J. Elkins, Sr., sold to William and Dudley his one-third interest in the business and ceased to be a partner. As a part of that transaction William and Dudley agreed that Henry might, in the future, at his election, acquire a share of the El Paso Electric Co. The following written agreement is evidence of the transaction:
“Colorado Springs, Colo.
May 15, 1945.
“KNOW ALL MEN BY THESE PRESENTS, That for *563 the sum of One Dollar and other valuable considerations Dudley J. Elkins, Sr. conveys his interests in THE EL PASO ELECTRIC COMPANY (trade-name, equipment, stock, etc.) in full to Dudley J. Elkins, Jr. and William I. Elkins.
“That Dudley J. Elkins, Jr. and William I. Elkins hereby agree that Henry W. Elkins will be entitled to purchase a share (up to 33% per cent) of said El Paso Electric Company at some future date decided by him; the purchase price of such share to be based on material at cost and equipment at a price agreed upon by the three parties concerned — mamely Dudley J. Elkins, Jr., William I. Elkins and Henry W. Elkins.
“This agreement entered into this 15th day of May, 1945, is retroactive to January 1st, 1945.
“We, therefore, affix our signatures this 15th day of May, 1945.
Dudley J. Elkins, Jr.
W. J. Elkins
Dudley J. Elkins, Sr.”
At the time of this transaction Henry was serving in the U. S. Navy. He was discharged from the Navy in April 1946 and then went back to work for El Paso Electric Co., where he was paid an hourly wage based on productive time, that is, time devoted to work for customers from whom revenue was obtained by the partnership.
During the summer of 1946, Dudley fired Henry. Shortly thereafter Henry learned of his right to buy into the company as provided by the instrument of May 15, 1945. He contacted William and Dudley and expressed his desire to buy into the partnership pursuant to the terms of the agreement. However, he had no money and no credits with the company and was unable to exercise his rights under the agreement. He continued to work for hourly wages as outlined above, and withdrew all of his earnings until 1950. As of January *564 1, 1950, he was accepted as a full partner, and subsequent to that date received one-third of the profits of the partnership.
On April 26, 1948, William and Dudley had taken title in their own names to what is known as the Business property. The purchase price of the property was paid by the partnership and the property set up on its books as a partnership asset. On January 1, 1950, the books of the partnership were adjusted so as to show the property withdrawn from the partnership assets and the capital accounts of William and Dudley were reduced in the amount for which the property was carried on the books of the company. At all times subsequent to January 1, 1950, El Paso Electric Co. rented this property from William and Dudley.
On April 26, 1950, William and Dudley purchased the so-called Corona Street property. The deed was to William and Dudley. The same was paid for by El Paso Electric Co. checks. The amounts of these checks were charged against the individual accounts of William and Dudley. This property never appeared on the books of the company as an asset.
On March 26, 1952, William, Dudley and Henry signed a formal partnership agreement. Pertinent portions of this agreement are as follows:
“WHEREAS the parties hereto have since 1946 been partners in the electric business known as EL PASO ELECTRIC CO. and now located at 431 East Pikes Peak Ave., Colorado Springs, Colorado, and
“WHEREAS the parties hereto since January 1, 1950 have been equal partners in said business, and
“WHEREAS the business of said partnership has heretofore been conducted without formal written agreement or articles of co-partnership, and
“WHEREAS it is the desire of all parties that a formal written agreement be entered into specifying the rights and interests of all parties to said partnership business,
*565 “NOW, THEREFORE, IT IS AGREED between the parties hereto as follows:
?;< * *
“IV

Capital

“The capital of the partnership has as of this time been contributed equally by the partners, subject to some bookkeeping adjustments on capital accounts, and each of the partners is now the owner of a one-third interest in said partnership business, and necessary future capital shall be contributed by the partners in equal shares.”
As early as 1945 and at all times thereafter the partnership had a complete set of books and had a bookkeeper. For years prior to 1952 the partnership had employed one Cole as their accountant; he supervised their bookkeeping, closed the books at the end of each year, and made partnership income tax returns as well as returns for the individuals. He died in 1952 and F. S. Auld, a certified public accountant (appointed by the court to make a summary of partnership transactions), took over his work and continued in that capacity through 1959.
Partnership returns filed for the years 1946, 1947, 1948 and 1949 show Henry as a partner and as receiving net income in amounts as indicated by the books as being his wages. These returns show capital contributions by William and Dudley • — ■ none by Henry.
As explained by Henry: “I submitted a weekly time sheet based on the job hours again and my weekly pay was based on productive job hours on the job.”
During the year 1949, the partnership return showed William and Dudley each having about $30,000.00 invested in the business. The return did not indicate that Henry had anything invested.
From the record it appears without contradiction that Henry, prior to 1950, was an employee, drawing wages, not sharing in profits; had no capital invested, and yet *566 without basis in fact and for the purpose of deception he was listed on partnership returns for the years 1946, 1947, 1948 and 1949 as a partner. The purpose of this deception was to enable the partnership to have one more employee without becoming answerable for governmental exactions for social security, unemployment compensation, workmen’s compensation, etc., imposed against those employing more than a specified number.
When the partnership agreement was signed March 26, 1952, the books of the partnership showed the capital accounts of the partners as follows:
Dudley $19,559.17
William 14,702.76
Henry 10,069.05
At that time the partnership books indicate nothing with reference to the Business property or the Corona property. At that time Henry knew that the partnership was, and for at least two years before had been, paying to Dudley and William $200.00 per month rent for the Business property, and that Dudley and William were collecting and retaining as their own rents from the Corona property.
This went on for ten years, and there is nothing in this record to indicate that Henry ever made any demands for a share in these properties or income derived therefrom. His first and only demand was when he intervened in the partition suit.
Among other things, the trial court found:
“12. In 1950 on January 1st the business property on Pikes Peak Avenue was transferred from the partnership assets to the plaintiff, William I. Elkins, and the defendant, Dudley J. Elkins, Jr., as individuals, and their capital accounts were accordingly reduced (Plaintiff’s Exhibit A, Schedule A); that this was done at the same time that the three parties orally agreed to become equal partners (Plaintiff’s Exhibit No. B), and was more than two years before the partnership agreement (Plaintiff’s Exhibit. B). was signed by all three *567 parties. The transfer of this property was done with the defendant, Henry W. Elkins, being fully informed.”
H: $ $
“3. That the business property on Pikes Peak Avenue was purchased from partnership funds when defendant, Henry W. Elkins, had made no contribution to the partnership funds and was not even at that time sharing in the equal distribution of profits and losses. Further that the transfer out of partnership assets of this property was done with the knowledge of the defendant Henry W. Elkins, and was part of a planned adjustment of capital accounts agreed to by the parties by their actions and conduct more than ten years prior to the filing of this suit, and that under such circumstances no trust is imposed upon this property or the plaintiff and defendant, 'Dudley J. Elkins, Jr., for the benefit of Henry W. Elkins.”
These findings are well supported by the testimony and documentary evidence.
Contentions of Henry find no sanction in the record and are in conflict with the written agreement of the parties, the books of account and ten years of Henry’s acquiescence in that which he now contends is contrary to the parties’ agreement.
For reversal, counsel urge:
First: That Henry was an equal partner since 1946. To so find would do violence to all of the documentary evidence and all of the testimony, even that of Henry. Income tax returns show that prior to 1950 Henry had no capital investment; he did not share equally, or at all, in the profits. The parties, including Henry, testified that he was designated as a partner on partnership income tax returns only for the purpose of enabling the then partnership to escape the necessity of paying taxes or discharging one of its employees. Henry admitted that in 1946, he tried and failed to become a partner pursuant to an option granted by William and Dudley; he failed to become a partner because *568 he had nothing in the way of capital to contribute to-the partnership, and nothing to offer William and Dudley as the purchase price of a one-third interest in the business. He continued to work for wages and through 1949 drew down every penny of wages earned. He signed an agreement in 1952 wherein it is stated that the parties “since January 1, 1950 have been equal partners.” The recital in this agreement that he had been a partner since 1946 was only repetition of the fictitious designation of him as a partner on the 1946-1949 income tax returns.
The record fully supports the trial court’s finding that Henry had no status as a partner prior to January 1, 1950.
Second: Counsel urge that the Business property was a partnership asset when acquired in 1948 and therefore Henry is entitled to a one-third thereof.
We cannot agree that the partnership acquired title to the property. Holding as the trial court did, and as we agree was proper, that Henry was not a partner until 1950, we find that William and Dudley were the partnership until January 1, 1950. At that time they reimbursed the partnership for the money advanced to acquire the property.
Henry, not being a partner, was in no position to complain of this transaction, nor was he in a position to complain even though it were true, as counsel for Henry contend, that William and Dudley were holding the property in trust for the partnership. He did not complain, but entered into the partnership with full knowledge that the partnership owned no real estate, was in fact paying $200.00 per month rental for the very property which he claims belongs to the partnership. As a partner he helped pay the rent on the property for more than eleven years — during which time he never asked for any part of the rent derived from the property which he now claims as .his own.
*569 ' The court properly found that Henry had no interest in either the Business property- or the Corona property.
Third: It is urged that the court erred in ordering furniture in the Corona property sold, there being nothing in the pleadings with reference to furniture. The furniture was acquired together with the real estate by William and Dudley, taken in their names, paid for with their money. The partnership had nothing to do with it. Here counsel do not question the court’s ruling that the Corona property, including the furniture, belonged to William and Dudley, and that Henry had no interest therein. Such being the case, Henry is in no position to complain of the court’s disposition thereof.
Fourth: Counsel urge that the partnership was dissolved on May 6, 1960, the day on which William quit work, and that the court’s finding that the partnership was dissolved on October 7, 1960, is in error.
- Overlooked by counsel for Henry is the fact that Henry, on September 9, I960, filed his answer and counterclaim, wherein he admits an allegation in William’s complaint, filed August 18, 1960, that the co-partners are “at the present time”' (September 9, 1960) carrying on the electrical business, and thereiii urged that “the business is valuable as a going concern” and should be sold as such. Also overlooked is the order of the court, dated October 3, 1960, entered pursuant to stipulation of the parties of that date, wherein it is stated that: “ * * * the partnership * * * should be dissolved immediately.
“The business shall be sold as a going business * * *
■ In view of the foregoing facts we find no merit in counsels’ suggestion that the partnership was dissolved on May 6, 1960. .....
Fifth: It is contended that error'was committed by the. trial court in admitting in evidence all of William’s Exhibit A, being the certified public accountant’s report prepared pursuant to agreement of the parties *570 and as provided in the pre-trial order. Counsel admit that the figures on the report are correct, but they object to certain recitations and assumptions of the auditor. In response to this objection, the court stated: “ * * * of course, any assumptions or presumptions would not be considered by the Court as evidence. * *
The report was prepared in conformity with the agreement of the parties and they are not in a position to complain. In addition, it is settled law that a trial court is well qualified to sift the admissible from the inadmissible and consider only that which is properly before it.
Sixth: Henry contends that the court erred in failing to make a charge against William and Dudley for improvements and repairs made on the property and paid for by the partnership. There was no evidence before the court as to the extent or value of improvements or repairs which it is contended were made by or paid for by the partnership. Even so, such improvements would be represented in the capital assets of the partnership upon dissolution, and would not inure to the benefit of any individual partner.
Counsel state that under a proper accounting it would appear that some credit should be due Henry regarding this work. Presumably this work was done ten years before the dissolution and accounting. Henry, claiming something, had the burden of proving his claim. We find no proof in the record whereby the court could make any award for maintenance or repairs. The court’s failure to award Henry “some credit” when there was no evidence to establish that any credit was due was not error.
We find no error as to any of the three judgments and each is affirmed.
Mr. Chief Justice Frantz and Mr. Justice Day concur.